case number 246021 United States of America versus Omar Wala oral argument not to exceed 15 minutes per side Mr. Lyons for the appellant good morning good morning your honor may it please the court Thomas Lyons appearing on behalf of Omar Wala like to reserve two minutes for rebuttal judge this case has three different issues but I'd like to focus on the loss issue we believe that the district court erred in applying the special rules for loss under USSG 2b 1.1 so this case is a conspiracy to cut to manufacture and sell counterfeit drugs under 21 USC 331 the defendant pled to an information and there was a written plea agreement basically the defendants compounded and distributed counterfeit praslam pills and using non-fda regulated compounds and non-controlled substances there basically are three different companies that were involved in making generic praslam pills and the parties agreed in the plea agreement that the conspirators cause loss to the pharmaceutical companies who legally sell those pills no other victims were identified in the in the plea agreement help me let me get oriented or is this the 10 person point is this the how we calculate the amount of the loss what this is the methodology in terms of how we calculate the loss okay and it's our position that the losses should be calculated based on the general rule where the court can estimate loss and the first factor under 3c is the fair market value or the replacement value to the victim and we contend that the victims here are the pharmaceutical companies who we were basically stealing their business it's important to understand that victims aren't the end-users that's not that's not was contemplated by the plea agreement and it's certainly not accurate in terms of how the product was sold agreements don't usually drive sentencing I mean in fact usually it's the opposite they reserve all that for sentencing no the point is that it was contemplated I didn't say they're foreclosed from asking or arguing that there were additional victims I'm not saying they were foreclosed for doing that I think what's important though is you need to understand that these were not sold to consumers out in the out in the United States the large bulk of these were sold on the dark web basically to middlemen drug dealers because the only reason to go to the dark web is that you're doing something that's illegal to whom they sold I don't think that was contemplated there was no interaction between the defendants and the consumers down the road why does that matter when it's incredibly obvious what's going to happen with these 16.1 million pills well I think the I think the answer basically is that the word victim has to be somebody that it suffered pecuniary loss the victim the consumers down the road got a product and there's no indication in the record there certainly wasn't any evidence one thing and it was something else why isn't that my client never represented that they were getting one thing he never had any interaction with anyone down the road so there's no dispute that the pills were counterfeit isn't that right that's correct the pills were counterfeiting in user didn't get what they paid for they paid two dollars appeal and they were not what they purported to be that's not correct nobody paid two dollars a pill in other words there was no evidence before the district court that anyone paid two dollars a pill but there was an estimate that price of each more there was an estimate that the price of each pill but we have no evidence in the record of that judge the the pills were sold at some I'm sorry your honor just decide that the reasonable estimate of the price of each appeal was $2 and the judge just decided that under a special rule he decided it basically because he used note 3 f5 as opposed to note 3 C okay but what's the basis for saying that the court's estimate of the value was unreasonable or unsupportable well for a couple of reasons the first is there was no information from victims that was provided to the district court there were no sales that were provided to the district court showing a $2 purchase price there were no victim impact statements a lot of cases where at sentencing people make estimates I mean that's I agree traditional this estimate was at the low end and there was evidence to support the estimate I mean unless unless your point is well that doesn't work estimates don't count we actually have to have the evidence of the ultimate buyer and you know figure out each transaction which I did not think was the rule I'm not arguing the latter judge what you just said I am arguing that there was no evidence in the record of a $2 per pill price what the court did was basically it looked at a couple of email or a couple of text messages that were exchanged between two co-conspirators and one of them mentioned a dollar per pill and then the court extrapolated from that it's somewhere between a dollar per pill for 16 million pills and 16 million pills and so it basically said it's something more than that but it didn't have any evidence to support that say that last sentence again yeah it's somewhere between a dollar per pill of 16.1 million pills and then you said or 16.1 million pills were you going to give us a time something or was I misspoke judge that's what I'm trying to get you to say it okay really wanted to say what did you really want to say well based basically what the court did was it extrapolate it did not have any sales at $2 so it took a sort of selective text messages where the parties are talking range of prices in the text messages was what there was a text message that said street people are probably getting two or three or more dollars per pill but but there's no evidence of that in other words that was just one of the co-conspirators speculating about what the ultimate end price was going to be I'm sorry your honor I can't report that have some knowledge of the transactions he was a co-conspirator in the distribution chain so in other words mr. bisaglia mr. Waller were co-conspirators they were producing the pills it just doesn't seem that speculative for them to be it's a market it might be an illegal market but markets it's really important what the prices are that tells you how much the middleman's willing to pay because that's how much they're gonna be able to make it at the end user this doesn't sound like and judge if there was a linchpin to the argument in other words if if the court were correct that mr. Waller represented two people that these were FDA approved drugs or that they required FDA approval neither of which is true that's how we got to the two dollar two dollar mark he basically said that although they are sold on the black market we look at whether or not they were represented as being FDA approved drugs counterfeit drugs by definition are not FDA approved can't be FDA approved and there'd be no basis for that so you're you're saying there should be a subtraction for I'm saying that the court should go back to the general rule which is the fair market value looking at Roman Roman at five it says talks about falsely represented as approved by the governmental regulatory agency law shall include the amount paid for the property and then no credit provided for the value of these items or services so you get no you're just kind of stuck I don't think I am stuck because the price paid in the PSR for instance the price a charge was between 20 cents and 80 cents what the PSR did was it said I'll take the medium and we'll we'll ascribe a caught a per pill price of 50 cents because they didn't have any sales at two dollars we're just I think we're just back to the estimate point and you know just give me a case if there's a case that says estimates in this area aren't allowed we'll follow it I just thought this happened all the time I think estimates are allowed but there has to be some factual basis for the estimate is the point you can't just don't suffice I guess it's your I do not believe that they suffice we've made some other arguments with regard to the sections of the guidelines that were used and basic basically they have to do with whether they were consistent with Riccardi and some of the other cases that the court has talked about these rules that are in 3f5 are really legislative rules so to speak the word loss nobody would sit here and say the word loss is two dollars per pill based on what you represented or what the street value of the pill was so for instance in Riccardi the court set aside one of the special rules as as to access devices you can't have a $500 arbitrary price put on an access device because the word loss doesn't encompass that I thought isn't Riccardi the case where they upheld making responsible for $500 in loss for every gift card even though the gift cards weren't five no Riccardi reversed the district courts decision in that regard as I recall basically Riccardi said the special rule in subsection one of that of that section which applied a $500 per price for each access card had nothing to do with what a normal definition of loss is and the same seems to be true of these other rules under the special rules obviously those the commentary is not part of the guideline text itself although we concede that the the commentary can be used still under the case and some more recent cases the other two issues had to do with the enhancements for 10 or more victims which goes right back to my argument that there are not 10 or more victims or how do you respond to the point that there's four pharmaceutical companies now you have to show there's you know not six more folks affected by this and there's 16.1 million pills distributed I see the logic I see the logic behind there must be more but the question is who is a victim who suffered pecuniary loss if if I'm purchasing back to judge Clay's point if it purports to be one thing and it's another everyone suffered everyone judge I want to make sure something's clear it didn't purport to be anything else the advertisement on the dark web specifically identifies these as pressed pills 2.5 milligrams and they have Klonopin Clonazam in them instead of Alprazolam in them so that the people who are purchasing them on the dark web that are going there surreptitiously are purchasing these with full knowledge of what's in these these are not these are not generic Alprazolam by a legitimate pharmaceutical company based on what was advertised on the dark web what's happening is middlemen are coming there getting these pills and then selling them wherever they want to sell them and the defendant has no defendant has no ability to know what those sales are for instance if if the pill sold for $50 a pill in Los Angeles versus $2 a pill in Lexington Kentucky wouldn't there be a rather large disparity for the exact same criminal conduct my time appears to have expired your honor thank you we'll hear from the government may it please the court Greg Rosenberg on behalf of the United States I want to with respect to how these pills were marketed on the dark web counsel for mr. Walla indicated that it was disclosed that these pills were pressed with something other than Alprazolam I would point the court to exhibit six which was a video exhibit presented at the evidentiary hearing at the 16 second mark we show you exactly what the mr. Wall and his co-conspirators listed and it says this listing is for 5,000 s 903 Xanax pills pressed with three milligrams of Alprazolam each pill is identical to pharma in size taste color they are best replicas on the market so no there's not disclosure here about exactly what they're putting in these pills and to judge Clay's point it is perfectly common sense that if I am purporting this pill using the imprint of the legitimate manufacturers purporting it to be Alprazolam and because of that it garners a certain price well yes that's that's the natural understanding of what loss would be we made a bargain I thought I was buying Alprazolam made by an FDA-approved manufacturer instead what I got was an unknown drug in an unknown quantity made in an unknown facility what's my loss what's what I paid for that that fraudulent pill we also want to flag this argument that that there was speculation on the part of the district court in coming up with the dollar per pill price of course this is the application of the methodology which would be reviewed under a clear air standard and as the court has noted the contemporaneous communications of Mr. Walla and his co-defendant Mr. Baseliga about their understanding of the resale price of these pills and as the court noted it was at the low end two to three dollars but those messages indicate it's five to ten dollars pill per pill in different states and the context for that is exactly what judge Sutton touched on which is that they recognized their sales and the prices they could charge on the dark web naturally depended on what those customers could in turn sell the pills to the people who are ultimately duped by these counterfeit pills they understood well if they're paying you know if they're getting two to three dollars five to ten dollars per pill certainly we should be able to charge you know 700 I think the text message references 700 to 800 in the context of a thousand dollar a thousand pill pack so 70 to 80 cents so they made that clear connection contemporaneous while they're operating this conspiracy moreover paragraph 28 of the PSR also referenced a confidential informant in the Eastern District of Kentucky who was purchasing these pills these counterfeit pills from the defendant and reselling it for six dollars per pill so you here you had corroboration of the defendants own understanding of this resale market moreover mr. Wallace sites no evidence that the resale price was lower than two dollars per pill so on a preponderance standard we believe the district court clearly properly chose you know a defendant friendly conservative end of that price range for the resale of these of using the special rule 3 f5 methodology as the court noted there are a number of triggers in rule 3 f5 two of which would applied here one was that regulatory approval was required for the goods but was not obtained and the second was that regulatory approval was falsely represented both of those applied here mr. Wallace argument essentially is that somehow a counterfeit drug is not a drug and that just runs contrary to the plain definition of those terms in 21 USC 321 G it also contradicts his own plea agreement where he pled guilty to causing a drug to be a counterfeit drug put simply a a counterfeit drug cannot be anything other than a drug it's kind of it baked into the definition so I don't think there's any real argument that a drug is not subject to FDA regulation it's it's kind of the quintessential good that is regulated by that statute the court also noted that by putting that imprint of the legitimate manufacturers on these pills making them look in the defendants own words you know the best replicas on the market it is communicating to the buyer of those pills this is the safe legitimate FDA approved alprazolam so it carried with that imprint this representation of FDA approval and again this is a perfect case for kind of why that's important it that FDA approval that stamp of safety and regularity is what gave these pills value we introduced exhibits one two and three which the district court cited where it talked about the feedback mr. Walla and his co-conspirators got from their buyers on the dark web where those buyers complained hey when you mess up the the print on these pills we can't move them to our customers people think they look sketchy people are worried that there's fentanyl in them so there is clear this connection of the value and import of the pills looking just like the genuine article it's because they're going to be resold to people who think they're getting the genuine article and thus paying that $2 per pill minimum price council briefly mentioned Riccardi council is correct Riccardi was the case that struck down the special the specific special rule about $500 per gift card and I think what was going on there was that an interpretation so what the what the Sixth Circuit held there is that because the commentary the application note was pre prescribing a specific numerical amount for loss that that's not an interpretation of the word loss it's an expansion of it it's it's whereas in five it just says you know you don't get a credit for loss yes so the the importance that mean the Kaiser hours just irrelevant to this no no your honor Kaiser an hour very much apply here and is the do we need them here for the to resolve this case I guess is what I'm getting at you know it's it's an argument from the defendants because they are still they're not you know even here today they're asking you should apply rule 3c application of 3c rather than three at five right well they're still arguing for application for an application so that means even under their argument that you know Kaiser an hour still apply you're still deferring to the commentary it's just they want the court to apply a different common you know a different part of the commentary than the one the district court applied so I don't think it's you know Kaiser our difference like this case does not turn on that more of her that isn't I look back in your brief and you didn't respond to the Riccardi argument what's your answer to that argument here well Riccardi is about a preset number $500 per gift card and Riccardi notes that quote precedent in this context recognizes that a specific numeric amount like the $500 in this case generally will not qualify as a mere interpretation of general non numeric language so that what the court is saying is you can't take the word loss in the guideline and say $500 per per card irrespective of what the facts are in the case is just a mere interpretation of loss but that's not what we have here here rule 3f 5 has no pre prescribed amounts in it it's still directing the court to calculate loss based on the specific facts of the case before it what it's saying is when you have a good that's supposed to be regulated and and someone goes out and sells a good that isn't it you know didn't get that regulatory approval the measure of loss is what folks pay for it doesn't say what that amount is because some settings it could be worth more $500 because you're not getting any credit for the value of the actual item right so I think that goes to you know what that value you know could even be when I'm selling you a pill that I'm saying this is the genuine article and it's a completely different drug so what that you know hypothetical value would be it's it's hard to say like what what are you gaining from that if if I'm being sold something that's completely a completely different item than what it's being represented at forgive me for not remembering this did he argue that he should get credit for the actual value no your honor so what mr. Waller argued was that rather than take any measurement of loss based on the people who are defrauded by these pills we should calculate loss based on what the pharmaceutical manufacturers are selling to you know wholesalers or pharmacies in the legitimate chain of distribution and this gets to this point about fair value we we argue that even under the fair market value standard the same result applies it would still be two dollars per pill because what is the market that's relevant here is it the legitimate chain of distribution where a prescription holding patient goes to the pharmacy and and buys the pills no mr. Waller and mr. boss Aliga they weren't selling their counterfeit pills to CVS and to Walgreens so why should we measure loss based on the prices there where they were directing their pills was the most profitable market the black market I think we have your argument all right thank you very much thank you your honors your rebuttal your honor please let me let me pick up on the Riccardi point I think your point is actually well taken that is that the amounts under 3f 5 are potentially much greater than the $500 example in the Riccardi case say again he said you didn't make that argument we did make the argument about Riccardi we're talking about the same thing the argument being getting credit for the actual value even though it's inflated what this says is you don't get credit for the value of the items even you know even counterfeit items have you know some value I'm taking the government its word that you didn't make that argument based on that clause I'm not you go ahead and tell me what your other argument is but am I right about that I'm not sure you are the brief does set out that the court should not have deferred to comment 3f 5 because of Riccardi and then we appended to that an argument that under Loper bright the Supreme Court case that recently came out that deference is even more difficult now I can't get around the fact that the Sixth Circuit has held in the UK's that the court can still give deference to the commentary notwithstanding the Loper bright case so that's a preservation issue for down the road if there is a down the road but I think the point here is that the word loss is ambiguous and it has to be within the the calculation in the commentary has to be within the zone of ambiguity is it was the government right when they said you wanted to apply a application note the court has to make some estimate of loss because yes yes is the answer to your question yes that means you have to accept some form of authority to create these application notes and based on existing Sixth Circuit law that that has to be done I see and so what I'm saying is under 3c it talks about the fair market value and it talks about the replacement cost to the victim and since we believe that the victims were the pharmaceutical companies then the replacement cost there is about six cents per pill as opposed to two dollars per pill thank your honor thanks to both of you for your helpful briefs and arguments we really appreciate it the case will be submitted